IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AMANDA CRAVEN,

                 Plaintiff,                  OPINION AND ORDER

  v.

                                           16-cv-53-wmc

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                 Defendant.

Under 42 U.S.C. § 405(g), *pro se* plaintiff Amanda Craven seeks judicial review from a denial of her application for supplemental security income by the Commissioner of Social Security. For the reasons provided below, the court concludes that the record and explanation of the ALJ adequately justify dismissal of her untimely request for review, having submitted no evidence supporting a finding of good cause to excuse her two-and-a-half-year delay in seeking benefits. As such, the court will affirm the ALJ's determination.

BACKGROUND

In September of 2010, Craven filed an application for supplemental security income ("SSI") benefits, with a protective filing date of August 5, 2010. In her application, Craven provided the address for her appointed guardian, but indicated that her living situation was unstable. Accordingly, she also provided a phone number. Craven expected the process to take a long time because acquaintances familiar with the process had told her that the processing of her application would likely take more than a year. Based on her conversation with an unnamed SSA agent, Craven also expected to be contacted via telephone about the results of her application.

Unfortunately, in correspondence dated October 14, 2010, the agency requested certain documents necessary to process the claim, and on November 12, 2010, when the agency did

not receive the requested forms, her application was denied in writing for failure to cooperate. This written denial included formal notice that Craven had 60 days to seek reconsideration of that decision.

While Craven claims that she never received this denial, she concedes taking *no* additional action on her application until July 8, 2013, two and a half years after the agency denied her application. At that time, Craven filed her request for reconsideration of the November 12, 2010 decision, stating that she "is significantly disabled from mental health issues that have been ignored by SSA." (Tr. 40 (dkt. #20).) She also submitted a statement arguing good cause for her untimely request. On July 9, 2013, the SSA denied reconsideration, finding there was no good cause for such a significant delay. The July 9th notice denying reconsideration also advised that Craven could request a "good cause" hearing, which she did on September 4, 2013. Along with that request, Craven's representative submitted a chronology of her mental health issues, which included a 1998 ADHD diagnosis, as well as records of a 2008 consultation related to her progress and need for medication. (*Id.* at 55-66.)

On March 12, 2014, a hearing was held before ALJ William Spalo to consider evidence and argument as to good cause. The ALJ admitted sixteen exhibits, including additional records of her psychiatric care from 2007 and 2008 that referenced a Wellbutrin prescription, and a chronology of her ADHD diagnosis and treatment. (*Id.* at 55-56, 65-66.) Additionally, Craven appeared with a non-attorney representative, who argued that Craven was misled into believing that the claims process would take years.

On April 8, 2014, the ALJ issued an unfavorable decision, finding (1) Craven's request for reconsideration was untimely and (2) her delay in requesting reconsideration was not excused by good cause. (Tr. 27-30 (dkt. #20).) In particular, the ALJ was unpersuaded by

Craven's claim that she reasonably thought that her claim was under review from September 2010 through July 2013:

> She has not argued that her mental health prevented her from understanding the claim process. She described her condition at the time as "a bit frazzled"; however, she was not hospitalized or taking any psychotropic medication at the time. In fact, she was working as an in-home babysitter for her counsel and looking for employment in a depressed job market.
>
> I note that the claimant alleges never receiving any of the written notices from the agency in 2010; however, she testified that she was living with her cousin and babysitting at that time. It is unclear why she would not have received her mail there. If she moved, the notices should have been forwarded or returned to the Administration. There is nothing in the record to show that the Administration knew or could have known that the correspondence did not reach the claimant.
>
> Even accepting that the claimant's statement that she did not receive forms to sign or notice of her denied claim, the claimant should have contacted the agency within a reasonable time to check the status of her claim. If the claimant had trouble reliably receiving her mail, she should have kept close contact with the Administration by telephone. Based on her testimony, she had telephone contact with the Administration in the past. She would have known how to contact them for updates.
>
> Finally, I note that the primary foundation of the claimant's argument is that she was told by "advocates" that that claims process was very slow; therefore, waiting more than two years to follow up was not unreasonable. However, at the hearing, the claimant could not recall who these "advocates" were and did not remember ever being told that "people die waiting" for their benefits.

(*Id.* at 29.)

On April 25, 2014, Craven filed a request for review of the ALJ's decision with the Appeals Council. On August 9, 2015, the Council issued its "notice of intent to dismiss plaintiff's request for hearing," citing to the SSA's Hearing, Appeals, and Litigation Manual ("HALLEX") provision 1-3-4-20, which permits the Appeals Council to dismiss a request for hearing for any reason available to an Administrative Law Judge under 20 C.F.R. § 416.1457. In particular, the notice explained that dismissal appeared appropriate because the ALJ should have dismissed the request for hearing, having found that Craven's request was not supported

by good cause. Even so, the notice also offered Craven 30 more days to send additional evidence or a supplemental statement in support of her claim.

With assistance from her non-attorney representative, Craven subsequently submitted multiple memoranda arguing that she was confused by the ALJ's line of questioning, attributing her confusion to her background in the foster system following her mother's death and to her 2006 diagnoses with several, severe mental disorders. (*Id.* at 5-11, 18-22, 68.) On November 23, 2015, the Appeals Council again denied her request for a hearing, noting that although Craven and her representative submitted comments in response to the Council's dismissal notice, those comments did not provide a basis for reconsideration. (*Id.* at 2.) The order went on to reiterate that Craven's request for a hearing should not have been granted by the ALJ in light of her failure to proffer any evidence of good cause. Rather, the Council found, the ALJ should have simply issued a dismissal as provided by 20 C.F.R. § 416.1457. The Appeals Council decision also stated that its decision "is final and not subject to further review." This suit followed.

OPINION

Previously, the court denied the Commissioner's motion to dismiss because this court has jurisdiction to consider "whether substantial evidence, and appropriate procedures, underlie the decision that [Craven] lack[ed] 'good cause' for her delay" (MTD Op. (dkt. #16) 6 (quoting *Boley v. Colvin*, 761 F.3d 803, 808 (7th Cir. 2014)).) Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion," and this court's review of the evidence is deferential, meaning that this court does not reweigh the evidence or substitute its own judgment for that of the agency. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

4

Nonetheless, Craven takes issue with the Appeals Council's brief conclusion, claiming that it lacked an explanation. The Appeals Council's dismissal decision was indeed brief and limited to concluding that Craven's comments on appeal did not suggest that the ALJ's conclusion should be altered. Specifically, pursuant to HALLEX provision 1-3-4-20, the Council's dismissal was based on the insufficient proof of good cause found in Craven's materials. There being no abuse of discretion on the face of that legal holding, the court appears without authority to look beyond the Council's decision.

A threshold question in this lawsuit is whether a district court has jurisdiction to evaluate the Appeals Council's decision. If the Appeals Council had simply denied review, then that decision is not subject to review. *See Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004) (concluding that district court could not consider additional evidence raised before the Appeals Council, because the Council denied the request for review and thus the district court was reviewing the ALJ's findings alone); *Eads v. Sec'y of Dep't of Health and Human Servs.*, 983 F.2d 815, 816-17 (7th Cir. 1993). On the other hand, because 20 C.F.R. § 404.970(b) permits the Appeals Council to consider "new and material evidence" related "to the period on or before the date of the [ALJ] hearing decision," this court can review an Appeals Council's mistakes in applying that regulation *de novo*. *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015) (if the Appeals Council deemed newly submitted evidence "not new and material," then the court has jurisdiction to review for legal error, but if the Appeals Council deemed the evidence new, material and time-relevant, then the Council's decision is non-reviewable); *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (citing *Perkins v. Chater*, 107 F.3d 1290, 1293-94 (7th Cir. 1997)).

Here, as Craven emphasizes, the Appeals Council's order offers very little detail about its evaluation. However, the order does reference the additional good cause evidence that Craven submitted in her appeal, suggesting that it treated this information as "new and material evidence." The Appeals Council also concluded that the comments did not "provide a reason to alter" its finding that the ALJ's good cause determination warranted dismissal. Accordingly, the Appeals Council's application of its own regulation is arguably unreviewable. *See Brown v. Colvin*, No. 14-cv-1797, 2015 WL 3886029, at *14 (S.D. Ind. June 22, 2015) (concluding that Appeals Council's decision that considered additional evidence submitted by claimant was not reviewable). Regardless, the information that Craven and her representative provided in support of the appeal elaborated on Craven's mental health issues, and the problems she faced growing up, and did not provide *any* additional details about what may have precluded her from following up on her application between September 2010 and July of 2013.

Even if the ALJ's underlying findings were before this court, there appears no basis to reverse them. The ALJ's starting point for his good cause determination was the examples set forth in 20 C.F.R. § 416.1411, which he noted in denying Craven's request for reconsideration:

- The claimant was seriously ill and prevented from contacting the SSA in person, in writing or through a friend, relative or other person.
- The SSA gave claimant incorrect or incomplete information about how to request administrative review or to file a civil suit.
- The claimant did not receive notice of the initial determination or decision.

6

- Unusual or unavoidable circumstances exist that show that claimant could not have known of the need to file timely, or which prevented claimant from filing timely.

*Id.* § 416.1411(b). Craven did not explicitly tie herself to one of these examples, arguing more broadly that the record shows: she misunderstood information provided by the SSA; she did not receive the notices from the SSA; and regardless, her disability prevented her from pursuing reconsideration in a timely fashion. While unavailing, the court will address each argument in turn.

*First*, Craven claims that she never received the November 2010 notice, and in any event, the SSA should have reached out to her over the phone. In particular, she argues that the SSA failed to follow two provisions of the Program Operations Manual ("POMS"), which provides guidelines for SSA employees processing disability claims. POMS DI 23007.005 provides that agency representatives should follow up with a claimant by phone if the claimant was asked for a form and provided a telephone number, and POM GN 03101.02 provides that claimants may seek to extend the time to file an appeal upon a showing of good cause, but does not set a deadline for leave to seek an extension. Craven cites no authority suggesting that these provisions have any legal force, and in fact the opposite is true: these instructions are not binding. *See Flint v. Colvin*, 543 F. App'x 598, 600 (7th Cir. 2013) ("[T]he [POMS] Manual is for the internal use of agency employees, has no legal force, and cannot bind the agency, let alone the district court."); *Parker ex rel. Lamon v. Sullivan*, 891 F.2d 185, 189 n.4, 190 (7th Cir. 1989) ("POMS manual has no legal force"). Regardless, to the extent these guidelines are relevant to the ALJ's determination, neither provision suggests that it was groundless.

Craven's citation to POM GN 0310.02 also makes little headway because the ALJ's conclusion was not tied to the notion that there was a deadline for Craven to request a good

cause finding. Rather, the ALJ considered her two-and-a-half-year delay as a factor in his good cause analysis, and he was ultimately unpersuaded by her purported belief that it was being processed throughout that time. The phone call guideline merits slightly more discussion given Craven's assertion that the agency should have called her, rather than mailing the decision to the listed address of her appointed guardian, William Eisinger, who was fighting cancer in 2010. Even accepting that Eisinger failed to pass on materials sent by the SSA *and* that someone at the agency failed to follow POMS DI 23007.005, however, the ALJ considered these factors and was more persuaded by other evidence. For one, the ALJ doubted Craven's claim that she did not receive the November 2010 denial, having explained where she was living during that time and nothing in the record suggesting that the agency had reason to know that Craven did not actually receive the agency's communications.

Further, the ALJ even set aside these reasonable doubts, assumed for purposes of his decision that she did not receive the notice and proceeded with a series of questions to determine why Craven did not pursue reconsideration until 2013. To that point, Craven testified that she was living in Florida when she filed the initial application and was told follow up communication with the SSA could be over the phone. She further explained that she was told to attend therapy to obtain her benefits, then heard nothing else from the SSA and did not receive the November 2010 letter. Rather, Craven only contacted the agency in 2013 shortly after she moved to Wisconsin because a friend recommended that she follow up. (Tr. 76 (dkt. #20).) Accepting, contrary to his doubts, that Craven may not have actually received the notice, the ALJ focused on Craven's ability to reach out to the agency by phone to check on her application, concluding that there was no justification for Craven's failure to take *any* steps to follow up with the agency, a fact he found puzzling given that Craven had reached out to the agency herself over the phone on other occasions. Relatedly, the ALJ rejected

8

Craven's testimony that "advocates" had told her that the claims process was extremely slow, since Craven could not recall who those advocates were or the details of what they told her.

*Second*, in an effort to show that her mental health problems support a finding of good cause, Craven claims that the ALJ failed to develop the medical record in making his good cause determination. As quoted above, the ALJ specifically found Craven's claim that she reasonably thought her claim was under review for years to be unpersuasive, pointing to several factors, the first of which was her mental health. As an initial matter, he rejected any suggestion that her mental health precluded her from seeking reconsideration, mainly because Craven never made that argument. Indeed, Craven did not put her mental health in issue at the good cause hearing at all; rather, the ALJ followed up with her in an effort to determine the impact, if any, of her mental health issues on her ability to appeal her application denial. When Craven commented that she was told to attend therapy, he followed up by asking her the purpose of therapy, and Craven responded only that she was following the instructions she was given, but was unable to go to therapy on a weekly basis. (*Id.* at 78.) Then he asked more specifically, "give me an idea of what your state of mind was at that time then and what your difficulties were so I can sort of understand." (*Id.*) She responded that she was a "bit frazzled," that she was helping her family by babysitting, and that she was trying really hard to find a job.

In Craven's view, the ALJ nevertheless failed to ask further questions about the purpose of her therapy and the reasons for no longer taking Seroquel. To the contrary, the ALJ did press her on her mental health in general terms, and Craven's responses to his questions did not suggest that he needed to drill down on those issues. When the ALJ asked her explicitly about her mental health, Craven did not testify that her mental health problems affected her cognitive abilities, instead emphasizing that between 2010 and 2013, she believed that her claim was being processed. Even so, the ALJ considered whether the evidence before him about

9

her mental health could conceivably have created a barrier to her pursuing reconsideration in a timely fashion, ultimately rejecting that notion.

In so concluding, the ALJ acknowledged that: (1) Craven described herself as "a bit frazzled"; (2) Craven had been told she had to go to therapy once a week to document her claim for disability; (3) Craven had been on Seroquel previously, but quit "cold turkey" because she had heard it is addictive; and (4) she avoids medications altogether. Ultimately, the ALJ was persuaded that her mental health was sufficiently intact to follow up on her claim, particularly given that she was not hospitalized, was working as an in-home babysitter, and was seeking outside employment. Accordingly, the ALJ's conclusion that Craven was not suffering from a mental illness that precluded her from seeking earlier review was supported by substantial evidence.

*Third* and finally, at various points in her briefing, Craven cites to *Dexter v. Colvin*, 731 F.3d 977 (9th Cir. 2013), but that opinion does not support her position. In that case, the Court of Appeals for the Ninth Circuit did not conclude that Dexter established good cause for her eleven-month delay in requesting a hearing on her application for benefits. Rather, the court concluded that Dexter alleged sufficient facts to *support* a due process claim related to how the ALJ handled her good cause arguments. *Id.* at 982. Regardless, the facts at issue in *Dexter* are sufficiently different from those Craven presented to distinguish that decision.

Dexter waited only eleven months to seek reconsideration, and alleged not only that she was physically ill during that time, but also that she was caring for her own mother, who died of cancer during the same time period. *Id.* at 979. Craven waited well over a year longer than Dexter; she did not provide specific evidence that mental illness precluded

her from pursuing reconsideration; nor did she allege that she was otherwise occupied in a manner similar to Dexter. As such, the court is unpersuaded that the *Dexter* decision suggests the ALJ improperly found that Craven's delay was supported by good cause. To the contrary, even if this court could reach the issue in light of the Appeals Council's rejection of her appeal as a matter of law, there is more than ample evidence to defer to the ALJ's findings of fact.

ORDER

IT IS ORDERED that the ALJ's decision concluding that good cause did not exist for plaintiff's failure to request reconsideration of the denial of her 2010 application for benefits is AFFIRMED. Accordingly, the clerk of court is directed to enter judgment for defendant and close this case.

Entered this 31st day of March, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge